**The below described is SIGNED.**

**Dated: October 10, 2006** _____

**JUDITH A. BOULDEN**
**U.S. Bankruptcy Judge**



_____

_____

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF UTAH

In re:

ROBERT EDWARD JAHKE,

        Debtor.

Bankruptcy Number: 05-22989

Chapter 7

BART TATTON,

        Plaintiff,

vs.

ROBERT EDWARD JAHKE,

        Defendant.

Adversary Proceeding No. 05-2320

Judge Judith A. Boulden

### MEMORANDUM DECISION DENYING MOTION FOR SUMMARY JUDGMENT

Before the Court is Plaintiff Bart Tatton's (Tatton) Motion for Summary Judgment

(Motion) seeking a determination of whether attorney's fees awarded to him in a state court

proceeding are nondischargeable under 11 U.S.C. § 523(a)(2)(A).[1]  Tatton argues that this Court

_____

[1]    Future references are to title 11 of the United States Code unless otherwise noted.

is bound by a state court ruling against the debtor, Robert Jahke (Jahke), awarding attorney's fees

to Tatton pursuant to Rule 11 of the Utah Rules of Civil Procedure and Utah Code Ann. § 78-27-

56 after the state court established that Jahke was grossly negligent when he built a cabin on

Tatton's property.  Jahke argues that the underlying state court findings and conclusions are

insufficient to support a § 523(a)(2)(A) claim because Tatton cannot establish reliance, nor can

Tatton show that Jahke "obtained" "money, property, services, or an extension, renewal, or

refinancing of credit" through fraud, false pretenses or false representations.  The Court has

considered the matters properly before it, the arguments presented by the parties, and has

conducted an independent review of applicable law.  Based thereon, the Court makes the

following ruling.

## I.    JURISDICTION AND LEGAL STANDARD

This is a core proceeding under 28 U.S.C. § 157(b)(2)(I), and the Court may enter a final

order.  Federal Rule of Bankruptcy Procedure 7056 makes summary judgment appropriate when,

after consideration of the record, the Court determines that "there is no issue as to any material

fact and that the moving party is entitled to a judgment as a matter of law."[2]  In applying this

standard, the Court examines the factual record in the light most favorable to the nonmoving

party.[3]  There is no genuine issue of fact "[w]here the record taken as a whole could not lead a

---

[2]    FED. R. CIV. P. 56(c).

[3]    *See Wolf v. Prudential Ins. Co. of Am.*, 50 F.3d 793, 796 (10th Cir. 1995).

rational trier of fact to find for the non-moving party."[4]  The moving party has the burden of

establishing that it is entitled to summary judgment.[5]

## II.    UNDISPUTED FACTS

There do not appear to be any material facts in dispute.  Both parties adopt and cite the

state court judge's Findings of Fact and Conclusions of Law (Findings and Conclusions) as the

underlying basis for the current claim for relief.  The Court has reviewed all of the Findings and

Conclusions and has considered them all in making its decision.  The most relevant portions of the

Findings and Conclusions and other portions of the state court record, however, are included

below:

*Findings of Fact*

2.  The Hansen survey was done at [Jahke's] request and the survey plat
confirms the survey done by Reeve & Sons attached to the Complaint on file
herein, and [Jahke] knew as of December 1, 1992[6] that his home was built on
[Tatton's] land, but continued to represent in his response to [Tatton's] Motion for
Summary Judgment and in his Amended Answer to Complaint dated 9th day of
June 2003, that the home was built on property he owned and occupied for 16
years.

8.  [Jahke] has admitted under oath that he did not build 'his home 16 years
ago on said property' or 'that said home has been in its present location for in
excess of 16 years' as set forth in his Amended Answer.  Further, [Jahke] admits
that he did not 'have a survey taken at the time his home was built' or 'that the
home is built on property owned by him' as set forth in the Answer to the
Complaint and the Amended Answer to Complaint on file herein.  In those same
Answers, [Jahke] alleges that '[Tatton's] action is either brought in bad faith and
meant only to vex [Jahke] or has been brought with insufficient and faulty
information, and that therefore [Jahke] should be awarded his costs and attorney's

---

[4]    *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[5]    *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986).

[6]    Tatton's attorney stated at the hearing that his office prepared the Findings and
Conclusions and that the reference in ¶ 2 to 1992 is incorrect.  The correct year is 2002.

fees for having to defend the same.'  The Court finds that the evidence received at
the trial on June 3, 2004 and that hearing held January 6, 2004, and the admissions
made by [Jahke] in his Second Amended Answer filed with the Court that those
allegations are totally false and without merit.

13. [Tatton's] attorney has represented to the Court that because of the
allegations made by [Jahke] in opposition of [Tatton's] Motion for Summary
Judgment and in the three Answers filed with the Court, he was required to spend
many additional hours contacting witnesses and researching the law.

*Conclusions of Law*

2. [Jahke] was grossly negligent in building his home on Lot 452.  He did
not have his lot surveyed at the time of building as he represented, and he failed to
consult with the surveyor he retained seven (7) years earlier.

9.  The Court is inclined to award attorney's fees to [Tatton's] attorney
under the provisions of Rule 11 URCP and §78-27-56 UCA.  The Court should
reserve final ruling until [Tatton's] attorney files a Brief in support thereof.  The
Court further reserves final ruling on any damages suffered by [Tatton] by reason
of [Jahke's] occupancy of [Tatton's] Lot 452 until further hearing thereon or until
the parties stipulate thereto.

Tatton filed a Memorandum in Support of Damages on October 15, 2004.  Jahke opposed the

memorandum.  On December 28, 2004 a telephone conference was held at which time the state

court judge stated in a minute entry:

This is before the Court for telephone conference at [Tatton's] request on his claim
for damages . . . Court has reviewed memorandums [sic] submitted by both
counsel and dismisses the argument made by [Jahke] that no issues were reserved.
Court will award damages.[7]

A written order liquidating the amount of damages was not entered prior to Jahke filing for

bankruptcy relief.

---

[7]        Tatton's Mem. Exh. 3. at 14.

### III.  PARTIES' POSITIONS

Tatton filed a complaint asking this Court to find that the attorney's fees awarded to him in the underlying state court action are nondischargeable under § 523(a)(2)(A).  Tatton argues that these fees were awarded to him because Jahke made false representations "regarding surveys of property boundaries that he knew to be true, but misrepresented to the [state] court were false.  Because of [Jahke's] false representations, the [state] court denied [Tatton's] early Motion for Summary Judgment and [Tatton] had to incur attorney's fees for trial preparation and trial."[8]  In response, Jahke makes numerous arguments stating why, as a matter of law, Tatton's Motion should fail.

### IV.  DISCUSSION

**A.      Collateral Estoppel and Full Faith and Credit**

Tatton asks this Court to adopt the Findings and Conclusions under the doctrine of collateral estoppel and find that the attorney's fees are nondischargeable under § 523(a)(2)(A). Collateral estoppel, or issue preclusion as it has come to be called, prevents the relitigation of factual or legal matters that were previously litigated and is applicable in bankruptcy court proceedings.[9]  Issue preclusion is broad and applies to claims for relief different from those litigated in the first action.[10]  When determining whether a state court judgment has collateral estoppel effect, this Court "is directed by the mandates of the Full Faith and Credit Statute to look

---

[8]      Tatton's Mot. Sum. Judg. at 2.

[9]      *Grogan v. Garner*, 498 U.S. 279, 284 n.11 (1991).

[10]     *Allen v. McCurry*, 449 U.S. 90, 94 (1980).

to the preclusion law of the state in which the judgment was rendered."[11]   The Findings and

Conclusions were issued by a Utah state court and, therefore, Utah issue preclusion law applies.

The Tenth Circuit has previously recognized that issue preclusion requirements under Utah law

are "substantially the same as under federal law."[12]   In order to establish issue preclusion under

Utah law, Tatton must show the following four elements:

> [1] the party against whom issue preclusion is asserted must have been a party to
> or in privity with a party to the prior adjudication; [2] the issue decided in the prior
> adjudication must be identical to the one presented in the instant action; [3] the
> issue in the first action must have been completely, fully, and fairly litigated; and
> [4] the first suit must have resulted in a final judgment on the merits.[13]

Tatton has established the first element of issue preclusion.   Both Tatton and Jahke were

parties to the state court litigation.   Tatton, however, cannot establish the second and third

elements of issue preclusion.   As to the second element, the Utah Court of Appeals has stated:

> it is not the identity of the thing sued for, or of the cause of action, which
> determines the conclusiveness of a former judgment upon a subsequent action, but
> merely the identity of the issue involved in the two suits. If an issue presented in a
> subsequent suit between the same parties or their privies is shown to have been
> determined in a former one, the question is res judicata [or collateral estoppel],
> although the actions are based on different grounds, or tried on different theories,
> or are instituted for different purposes and seek different relief.[14]

---

[11]    *State of Missouri ex rel Nixon. v. Audley (In re Audley),* 275 B.R. 383, 387 (10th Cir.
BAP 2002) (citing *Marrese v. Am. Academy of Orthopaedic Surgeons,* 470 U.S. 373 (1985)).

[12]    *Frandsen v. Westinghouse Corp.*, 46 F.3d 975, 978 (10th Cir. 1995) (quoting *Murdock v.
Ute Indian Tribe of Uintah & Ouray Reservation,* 975 F.2d 683, 687 n.5 (10th Cir. 1992), *cert. denied*,
507 U.S. 1042 (1993)); *see also Atiya v. Salt Lake County*, 988 F.2d 1013, 1019 (10th Cir. 1993) (listing
the collateral estoppel requirements under Utah law).

[13]    *Brigham Young Univ. v. Tremco Consultants, Inc.,* No. 20020687,
2005 WL 221574, at *7 (Utah February 1, 2005) (citing *Murdock v. Springville Mun. Corp. (In re Gen.
Determination of the Rights to the Use of All the Water)*, 982 P.2d 65, 70 (Utah 1999)).

[14]    *Collins v. Sandy City Bd. of Adjustment,* 16 P.3d 1251, 1253-54 (Utah Ct. App. 2000),
*affr'd Collins v. Sandy City Bd. of Adjustment*, 52 P.3d 1267 (Utah 2002) (alterations in original, internal
citations and quotation omitted).

The state court litigation against Jakhe was, at heart, a quiet title and trespass action.  Although the state court judge did find that Jahke made various allegations that were false and without merit, the elements of fraud and false representation that require a finding of intent were not addressed by the Court and the parties never fully litigated that issue.  As a result, there is no identity of the fraud/misrepresentation issue between this nondischargeability action and the state court action.

The third element of issue preclusion requires that the parties were given the opportunity to fully and fairly litigate fraud or the making of false representations.  "Whether a party had a full and fair opportunity to litigate in a proceeding that may later have collateral estoppel effect is examined by questioning whether there were significant procedural limitations in the prior proceeding, whether the party had the incentive to litigate fully the issue, or whether effective litigation was limited by the nature or relationship of the parties."[15]  The parties had no incentive or opportunity to litigate fraud/misrepresentation in the underlying state court action.  Tatton wanted to quiet title and have Jahke's cabin removed from his land.  The state court record, as presented by the parties, does not demonstrate that fraud or misrepresentation allegations akin to the type needed to establish a § 523(a)(2)(A) claim were ever litigated by the parties.  For these reasons, the Court denies the portion of the Motion based on collateral estoppel.

---

[15]    *McCain Foods USA Inc. v. Shore (In re Shore)*, 317 B.R. 536, 543 (10th Cir. BAP 2004) (examining Kansas' issue preclusion law which is similar to Utah's on the issue of whether the first action was completely, fully, and fairly litigated) (internal citations and quotations omitted).

**B.      Section 523(a)(2)(A)**

The Court has found that the Findings and Conclusion are insufficient under collateral

estoppel to establish a § 523(a)(2)(A) claim.  As a result, the Court must examine whether the

Findings and Conclusions paired with the additional undisputed facts presented by the parties are

sufficient to maintain a claim under § 523(a)(2)(A).  Section 523(a)(2)(A) provides: "A discharge

under section 727 ... does not discharge an individual debtor from any debt — (2) for money,

property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by —

(A) false pretenses, a false representation, or actual fraud."  The elements necessary to prove a

claim for relief are found in the general common law of torts as understood in 1978 when

§ 523(a)(2)(A) was enacted.[16]  The Restatement (Second) of Torts (1976) (Restatement) defines

"misrepresentation" as:

> One who fraudulently makes a misrepresentation of fact, opinion, intention
> or law for the purpose of inducing another to act or to refrain from action
> in reliance upon it, is subject to liability to the other in deceit for pecuniary
> loss caused to him by his justifiable reliance upon the misrepresentation.[17]

Prior Tenth Circuit law required the following elements to be satisfied under § 523(a)(2)(A):

(1) the debtor made a false representation;
(2) the debtor made the representation with the intent to deceive the creditor;
(3) the creditor relied on the representation;
(4) the creditor's reliance was reasonable; and
(5) the debtor's representation caused the creditor to sustain a loss.[18]

---

[16]      *Field v Mans*, 516 U.S. 59 (1995). In *Field*, the Court looked to the treatment of
"misrepresentation" in the RESTATEMENT (SECOND) OF TORTS (1976), published shortly before Congress
enacted the Bankruptcy Code.  *Id*. at 70-72.

[17]      RESTATEMENT at § 525.

[18]      *Fowler Bros. v. Young (In re Young)*, 91 F.3d 1367, 1373 (10th Cir. 1996).

This test has been expressly modified inasmuch as "justifiable" not "reasonable" reliance must be

shown.  In addition, although the Tenth Circuit's stated test does not differ dramatically from the

definition of misrepresentation stated under Restatement § 525, it is more accurate to rely on

Restatement § 525 rather than this five-point test.[19]

The threshold inquiry under § 523(a)(2)(A) is whether there is a "debt."  The Supreme

Court has stated: "A 'debt' is defined in the Code as 'liability on a claim,' § 101(12), a 'claim' is

defined in turn as a 'right to payment,' § 101(5)(A), and a 'right to payment,' we have said, 'is

nothing more nor less than an enforceable obligation.'"[20]  Adopting this reasoning, the Court finds

that there is a debt owed to Tatton.  The Findings and Conclusions awarded attorney's fees to

Tatton under Rule 11 of the Utah Rules of Civil Procedure and Utah Code Ann. § 78-27-56.  The

state court judge never specifically attributes which factual findings justified this sanction but this

Court infers that it was Jahke's numerous false statements to the state court throughout those

proceedings that lead to the award of fees.  As a result, Tatton has a right to payment for

attorney's fees that is enforceable against Jahke.  It should be noted, however, that not all debts

are nondischargeable.

The second inquiry is whether any money, property, services, or credit was "obtained."

Tatton has a debt (a right to payment for fees) but there is still a question regarding who must

"obtain" the debt in order to establish a claim under § 523(a)(2)(A).  The question presented by

this case is whether a **debtor** has to "obtain" the money, property, services, credit or a related

---

[19]     *Skull Valley Bank of Goshute Indians v. Chivers (In re Chivers)*, 275 B.R. 606, 619
(Bankr. D. Utah 2002) (stating the test set forth in the Restatement, and reconciling it with *Young*).  *See
also Lang v. Lang (In re Lang)*, 293 B.R. 501, 514 (10th Cir. BAP 2003) (discussing *Young* as modified
by *Field*); *accord*, Audley, 275 B.R. at 388.

[20]     *Cohen v. de la Cruz*, 523 U.S. 213, 218 (1998) (internal citations omitted).

benefit, or whether a nondischargeability judgment can be based on facts establishing that the

fraud or misrepresentations caused another party to incur a debt of money, services, property, or

credit.  Stated differently, who is the actor that must obtain the debt — the creditor or the debtor?

In most § 523(a)(2)(A) cases, it is the debtor who actually obtains the money, property,

services, or credit through fraud or a false representation, and the damages that are declared

nondischargeable are the amounts the debtor obtained.  There is an exception to this general rule.

In *Cohen,* the Supreme Court established that after a court has found that a debtor has obtained

money, property, services, or credit through fraud or false representation, other damages arising

from that fraud or false representation are also nondischargeable.[21]  *Cohen* dealt with a debtor

who had fraudulently obtained rent from tenants.  The Supreme Court held that § 523(a)(2)(A)

was sufficiently broad to encompass the punitive award of treble damages under a state statute by

a state court (that were never "obtained" by the debtor) and that those treble damages, as well as

the underlying amounts that were fraudulently obtained, were nondischargeable under

§ 523(a)(2)(A).[22]  Similarly, in *In re Pleasants*[23] the Fourth Circuit held that § 523(a)(2)(A)

prevents discharge of payments to third parties arising from the debtor's fraudulent statements.[24]

The creditors in *Pleasants* hired the debtor and his company to do a renovation project.  The

debtor represented to the creditors that he was an architect when in fact he was not.  The debtor

---

[21]     *Id.*

[22]     *Id.* at 223.

[23]     *Pleasants v. Kendrick (In re Pleasants)*, 219 F.3d 372 (4th Cir. 2000).

[24]     *Id.* at 375.

made numerous mistakes, and the creditors had to pay third parties to correct those mistakes. The court found that money the creditor paid to the third parties was nondischargeable under § 523(a)(2)(A) even though the debtor never personally "obtained" this money.[25]  In both cases the fraudulent misrepresentations or acts were perpetrated on the creditor seeking relief under § 523(a)(2)(A).  In both cases, the debtor had committed a fraudulent act resulting in an underlying § 523(a)(2)(A) judgment.  In sum, those cases stand for the proposition that an underlying fraud or false representation damage award can be augmented by other damages resulting from the fraud or false representation.

The damages Tatton seeks are not the same as the treble damage award and the third party damage augmentation found to be nondischargeable in *Cohen* and *Pleasants* because the punitive and augmented damage awards in those cases were based on findings of underlying fraud or false representation sufficient to establish a § 523(a)(2)(A) claim.  Here, Jakhe made false statements to the state court in what Tatton claims was an attempt to avoid summary judgment.  Although Tatton may have suffered some harm as a result of Jakhe's statements, the state court never made underlying findings that Tatton obtained any money, property, services, or credit by fraud or false representation.  As a result, there are not sufficient findings to establish a § 523(a)(2)(A) claim.

Even if the Court could get past the "obtained by" problem articulated above, there are just not enough facts before this Court to award a nondischargeability judgment in Tatton's favor. In order for this Court to find a debt nondischargeable based on a state court's findings and conclusions, those findings and conclusions must set forth sufficient factual findings to support each element of a § 523(a)(2)(A) claim.  The Court has closely reviewed the Findings and

---

[25]   *Id.*

Conclusions in the case.  The state court judge did find in ¶¶ 2, 8, and 9 that Jahke made

numerous statements that were false.  In his conclusions, the state court judge did "award

attorney's fees to [Tatton's] attorney under the provisions of Rule 11 URCP and §78-27-56

UCA" which could arguably establish the first and last element of fraud or false representation.

But what is missing from the Findings and Conclusions is everything in between.  The state court

judge made no findings regarding Jahke's intent,[26] and he made no findings regarding Tatton's

reliance.

This deficiency arises regardless of whether the claim falls under actual fraud or false

representation.  The parties quibble about what type of wrong Jahke committed.  The elements of

actual fraud and false representation have been articulated above and both require reliance.[27]

Restatement § 537 provides:

> The recipient of a fraudulent misrepresentation can recover against its maker for
> pecuniary loss resulting from it if, but only if,
> (a) he relies on the misrepresentation in acting or refraining from action, and
> (b) his reliance is justifiable.

Assuming, *arguendo*, that there are sufficient findings to establish that Jahke made a false

representation, that he did so with the intent to deceive the creditor (intent appears nowhere in the

Findings and Conclusions), and that the creditor was damaged, this Court must still make a

finding that Tatton relied on the representation and that the reliance was justifiable.  Tatton

concedes that it was the state court that relied on Jahke's false statements but argues that Tatton

---

[26]   Tatton's attorney urged this Court to infer a finding of intent from the fact that the state
court sanctioned Jahke.  This Court, however, cannot make that inferential leap because intent is an
essential element of a § 523(a)(2)(A) action.

[27]   During oral arguments, Tatton's attorney asserted that a claim for false representation may
not include the element of reliance but he was unable to direct this Court to any case law supporting his
argument.  His argument is incorrect.  Both fraud and false representation include the element of reliance.

was also forced to rely on the false statements because the state court based its denial of summary

judgment on those false statements.  Tatton asserts he had no choice but to adopt the state court's

decision, rely on the false statements, and go forward to trial.  Comment a. to Restatement § 537

explains: "If the recipient does not in fact rely on the misrepresentation, the fact that he takes

some action that would be consistent with his reliance on it and as a result suffers pecuniary loss,

does not impose any liability upon the maker."  This is exactly what has occurred here.  Jahke

made a representation, the state court arguably relied on that representation and denied summary

judgment.  The fact that Tatton took action by further prosecuting the case after the state court

relied on the representation does not necessarily make Jahke liable to Tatton under the legal

theories of fraud and false representation.[28]  Although the Court is sympathetic to Tatton's

position, there is nothing in the state court record presented to this Court to date or the

supporting affidavits showing that Tatton in fact relied on Jahke's representations.[29]  Under no set

---

[28]    Again, the Court notes that Jahke does owe a debt to Tatton by virtue of the state court's award of fees.  The problem in this nondischargeability action is that the facts do not support a claim for relief under § 523(a)(2)(A).

[29]    The Court indicated after oral arguments that there was a line of case law involving sanctions and fees awarded in cases against debtors who were involved in protests against abortion clinics.  *See e.g.*, *Planned Parenthood of Columbia/Willamette, Inc. v. Treshman (In re Treshman)*, 258 B.R. 613 (Bankr. D. Md. 2001) (court found debt awarded by district court under the Freedom of Access to Clinic Entrances Act to be nondischargeable in bankruptcy under § 523(a)(6)); *Planned Parenthood of Columbia/Willamete, Inc., v. Bray (In re Bray)*, 256 B.R. 708 (Bankr. D. Md. 2000) (finding debt owed to judgment creditor for violating Freedom of Access to Clinic Entrances Act to be nondischargeable under § 523(a)(6)); *Buffalo Gyn Womenservices, Inc. v. Behn (In re Behn)*, 242 B.R. 229 (Bankr. W.D.N.Y. 1999) (finding civil contempt damages and attorney fees awarded against debtor by district court for violating a temporary restraining order by blockading creditor's clinic and harassing those entering the clinic to be nondischargeable under § 523(a)(6)).  In response to these cases, certain Congressional members supported amending § 523(a) to include these types of damages and sanctions. These proposed amendments were never adopted by Congress.  *See* U.S. Congressional Research Service. Consumer Bankruptcy Reform in the 109th Congress: Background and Issues, by Robin Jeweler. Text in: http://www.abiworld.org/pdfs/s256/CRS-background.pdf.  Accessed on October 5, 2006.

of facts presented to this Court could it rule that Tatton's reliance was justifiable and that it resulted in his damage.

## V.  CONCLUSION

This Court is charged with the task of deciding whether fraud or a false representation perpetrated on a creditor is sufficient to find a debt nondischargeable. The Findings and Conclusions establish that Jahke made a number of false statements during the course of the state court litigation and that Tatton incurred fees and costs in litigating the state court case post-summary judgment.  The state court, however, did not make findings that would support the other elements needed to establish a § 523(a)(2)(A) claim, nor were those Findings and Conclusions sufficient to establish the claim based on collateral estoppel.  For these reasons, the Court finds that Tatton is not entitled to judgment as a matter of law and denies the Motion. Tatton has not pled any other claims in his complaint.  The Court cannot, however, at this time dismiss the complaint because there is no cross-motion for summary judgment pending.  A separate order will be issued.

--------------------------------------END OF DOCUMENT ----------------------------------

_____ooo0ooo_____
**SERVICE LIST**

Service of the foregoing **MEMORANDUM DECISION DENYING MOTION FOR**

**SUMMARY JUDGMENT** will be effected through the Bankruptcy Noticing Center to each

party listed below.

Joseph M. Bean
Bean & Smedley
471 W. Heritage Park Blvd.
Suite 1
Layton, UT 84041
     *Attorney for Plaintiff*

Celeste C. Canning
2590 Washington Blvd.
Suite 200
Ogden, UT 84401
     *Attorney for Defendant*

David L. Miller tr
849 West Hill Field Road
Barnes Bank Building
Suite 202
Layton, UT 84041
     *Chapter 7 Trustee*